Council, if you could approach. Let me just first state for the record that Justice Puchinsky is not here, but we'll certainly consider the tapes of the arguments today. So why don't you state your names and let us know who you represent. Jessica Pammon on behalf of the Office of the State Appellate Defender and I represent the appellant Jason Negron. And I'm Heather Farnkrog on behalf of the people of the state of Illinois. And I'll be addressing the fingerprint issue. My partner Amy Wittroba-Kern will address the DNA issue. We're getting the convo planner today. Yes. Very good. All right, 15 minutes per side. You're KG veterans. You know what we do here. Okay. Thank you. May it please the Court. Your Honors, I'd like to focus on argument one, the fingerprint issue. And if you all have any questions about argument two, the DNA issue, I'd be more than happy to answer any questions that you may have. Would that be because despite encouraging us to hold apparently that the Illinois Supreme Court wrongfully decided Williams, which maybe you know better than I that our ability to make such a statement in the appellate court, but now that Williams has been decided by the U.S. Supreme Court that we should pretty much put that issue aside? Well, Your Honors, Mr. Negron acknowledges that the United States Supreme Court recently ruled in Williams v. Illinois that there was no confrontation clause violation. The critical issue there being that the report that the expert relied on was found not to be testimonial. But in our case, we'd argue that the report that the expert relied on in our case was testimonial. That's the critical distinction between our case and Williams. If you take a look at Justice Thomas' concurrence and how he defines what is testimonial evidence, what he says is required in order to make a report testimonial is that there be some kind of certification of the processes and the results that the testers used. And in this case, what we have is exactly that. Gina Panetta, in her testimony, certified the accuracy of that report. She testified to the processes that the testers employed. She was not in the lab, but she testified about what they did. She vouched for their accuracy. She testified about the quality control measures that are in place. How does that comport with the plurality opinion, however? Your Honors, well, Justice Thomas' opinion, his concurrence, defines what is testimonial. In this case, we acknowledge that Mr. Negron was not a suspect at the time of the testing. But under Justice Thomas' definition of what's… That's only his opinion, though, right? One out of nine. Well, that's all that we need to get five members of the jury to agree that this was testimonial. We know that it's hearsay because the plurality… This is a jury trial here, so we know that the jury was not able to be able to discern what evidence was given for the basis of the opinion versus what's considered for the truth of the matter. So the plurality agrees that this was considered for the truth of the matter. So the only critical issue here is, was it testimonial? And Thomas is the swing here. And so under his definition of what is testimonial evidence, Your Honor, we argue that this case fits that. And I'd like to remind the court that the court does not even need to reach this issue. Because it is constitutional in nature, Your Honor, if this court reverses on Issue 1, there's no need to even reach the DNA issue. And I'd like to go to Issue 1. Your Honor, this court should reverse and remand this cause for a new trial because the fingerprint examiner, William Kovacs, gave his opinion that the latent prints found on the door of Santiago Uriarte's home matched Negron's print. But the state failed to lay an adequate foundation for his conclusion. Kovacs merely informed the jury that he determined that there was a match, but he did not disclose any points of comparison that he found between the two prints. This court was clear in Safford that when… or offer as part of the foundation that he did that. And I understand what Safford says, but it's kind of an outlier case, not only in this jurisdiction, but in other jurisdictions. But under those circumstances, isn't the real question how much someone must say on direct examination to be allowed to offer the opinion? And not whether… Aren't most cases talking about the weight that should be ascribed to the opinion, which of course is a decision for the trier of fact? Well, this court said that when the number of points of comparison start nearing zero, that this is an admissibility issue. We don't know that it reached zero because he didn't say how many he had. He didn't apparently recall how many he had. And so while that is certainly fertile ground for cross-examination of the person and allows for someone to have a question about whether to accept the opinion offered by the expert, what we're really talking about here is whether it should also be part of the gatekeeping function to say if you don't say this in direct examination, we are not going to allow you to offer your opinion. And that's a much different issue, is it not? Well, Your Honor, the issue here is whether or not the State provided any basis for the defendant to be able to cross-examine how he reached the conclusion. Mr. Kovacs went on at length about the methods that he followed and the processes, but he never connected it to his results. He never explained what are the unique characteristics that I saw on the latent print that led me to that conclusion. How did that impinge the cross-examination? Because Mr. Kovacs testified he had no notes, he did not count, he did not note any points of comparison. That might be a better cross-examination for the defendant. He might get more ammo that way. That's exactly what the defendant did cross-examine him on. But this Court said in Safford, vigorous cross-examination that occurs as to the absence of detail is hardly adequate to test the substance of examiner Coutreau's opinion. And that is exactly what we have here. Although defense counsel was able to cross-examine him as to the lack of detail, he was never able to get at what led him to the comparison. And that is exactly what this Court found to be reversible error in Safford. And the state's case that it cites is People v. Mitchell. This case is distinguishable from Mitchell. In Mitchell, the fingerprint examiner produced a chart of the latent print and had a photograph of the defendant's print, presented that in front of the jury. She got off the witness stand and into the jury well and pointed out specifically five points of comparison for them to see. And then she stated to them that she had found 13 points of comparison in total. That is completely lacking in this case. Right, but if we move beyond the realm of fingerprint examiners and take the broader view of what is a foundational requirement for expert witnesses to give their opinion, such things as opinions as to say post-traumatic stress disorder or things of that nature, and look at what Wilson v. Clark and its extensive progeny has said, can you point to other areas where the courts of this state have been so stringent on the foundational requirements for offering the opinion in the first place? Well, even if you go back to the case that you cite, the Wilson v. Clark case, that's based on Rule 705. And if you take a look at that rule, that rule says that the expert does not have to give his underlying basis on direct, but he does have to give it on cross if the defendant asks for it. In this case, the defendant could not get at it. The defendant could not get to that underlying basis because Kovacs said he had no way to give it to him. He said, I have no notes. I did not count. I did not note any points of comparison. Basically, he's saying, take my word for it.  And that's what this court found was a problem in Safford. Can you answer my question, though, about any other types of expert opinion testimony that has been barred from admissibility, as opposed to subjected to cross-examination based upon this type of a stringent limitation? Off the top of my head, no, I cannot. But what this case clearly held in Safford is that some points of comparison need to be disclosed. We don't know if Kovacs found one. We don't know if he found two. We have no idea because Kovacs could not testify to what he saw. And this issue is not forfeited, as the state contends, because defense counsel made an objection right when the examiner, Kovacs, got ready to state what his opinion was. Counsel objected. This was an invitation, wasn't it, by the judge to say, you don't really have to do this again to preserve your error. It was done in pretrial, and it was raised again with a general objection, and then it was also included in the post-trial motion. Right. The court explained to defense counsel all that counsel needed to do in order to object is to just say that she was renewing her objection because the issue had been fully litigated prior to trial. At the post-trial motion, neither the court nor the state denied that counsel had properly objected. Unless my colleagues have questions on that area, I would suggest that you move on to a different one. I'm good. Okay. This issue is not harmless, as the state contends, Your Honor. The only other evidence in this case against Mr. Negron was the DNA evidence. There was no confession. There were no eyewitnesses. There were no proceeds of the burglary found on him. And this court found reversible error in Safford, and in that case, there was significantly more evidence of guilt than in our case. In Safford, there was an identification of the defendant by the victim. There was an identification of the defendant by a witness, and there was also testimony from someone who claimed to have sold the actual gun to the defendant. And in this case, we have only the DNA evidence, which the jury, we don't know how much weight the jury gave the DNA evidence. And this court has said in Safford that fingerprint testimony is very, very persuasive. This court has said it is extremely persuasive. And so we don't know that this did not, you know, affect the jury's decision. The DNA evidence, I mean, it's complex. Some people understand it. Some people don't. They didn't have anybody to testify who actually tested the DNA and came up with the profile. There was nobody to testify from Cellmark who tested the tissue. So the jury, in their mind, could have been thinking, oh, this evidence is not so reliable because all we have is Gina Panetta vouching for what someone else did. And so in this case, we'd argue that this is reversible error here, Your Honors. So if this court has no further questions, we'd ask that you reverse and remand this cause for a new trial. Thank you. Good morning, Your Honors. May it please the Court. I will address the fingerprint issue. First, Your Honors, this case is not Safford, and I'm going to tell you why. In this case, the expert was asked specifically, what is the basis for your opinion? And he replied, he used the quantitative qualitative ACEV method, and he found a sufficient number of points of sufficient clarity and quantity. And that's what makes this case different from Safford. He didn't give a specific number, and when asked repeatedly on cross-examination, you know, did you count, how many points of comparison, he made it very clear, unlike the examiner in Safford, why he didn't count. He talked about the complexity, the overall assessment required in comparing fingerprints. He talked about edging ridges, flowing ridges, the breadth of ridges. So you're arguing he was more careful? He was more in-depth in explaining his methodology. Wouldn't you think in a murder case, where one of the key pieces of evidence is fingerprint or palm print identification in either case, that explaining the areas of similarity, and maybe even showing exhibits demonstrating the similarity, would be something that a careful prosecutor and a careful fingerprint examiner should do? I think this examiner did what was required for direct. I think on direct, he explained... What about the lawyer asking the questions? I mean, there is such a thing as foundation, and you're practically writing the brief for the defendant by not putting on some kind of foundation. It doesn't seem that difficult to do. In this case, the foundation was there for the admissibility of this testimony on cross-examination. Could the defense attorney have asked him specifically where point A matches point B? He had the latent and the standards in front of him, and they didn't ask those questions. And the reason the defense attorney didn't ask those questions is because all they had as their trial strategy was reasonable doubt. And in closing argument, he said to the jury, did you hear about any points of comparison? Do we know what characteristics matched? That was their whole theory at trial. So those questions were not asked on cross-examination. He kept nailing the examiner down on, there are no notes. You can't give me an exact number. The point I'm trying to make, maybe inarticulately or inartfully, is that the state, by not putting on much of a foundation, and I think that's generous, is not only supplying the defendant with the main argument on appeal, it also apparently was the main argument in front of the jury. You're saying we allowed that. Yeah, how about instead of enabling, how about disabling it by putting on some foundation? Certainly, as we argued in our brief in the Mitchell case, that was done. That was done, and that was very effective. And our case is not, we didn't do it, we did a Mitchell, but we didn't do it, it was done in Safford either. The foundation was enough, enough that the testimony and the opinion was admissible, it went to the weight, the way that this examiner testified and explained his methodology was for the jury to decide his credibility, and it was a trial strategy of the defense not to specifically have that comparison done. That is true. But this examiner, unlike Safford, did explain at length, in great detail, the overall assessment that he did. It wasn't a partial print, it wasn't a fingertip, it was a full palm print, right hand and left hand, and then a second set of full palm prints that he did a confirmatory analysis, and both of those sets were verified. So the jury had all this information, and were able to decide the weight. Unlike Safford, where there was confusion, the jury sent out a note, they asked for a magnifying glass, they got hung up on this. The jury in our case deliberated for 50 minutes. They weren't confused, they determined the credibility of this examiner, and they came to their conclusion that the testimony was credible. If there are any more questions? The witness also testified that he had matched off side by side, is that correct? That's correct. He explained that he uses a Henry magnifying glass, he puts them side by side, he went through each aspect of the ACEV method with his employees, he was cross examined at length on his methodology, and how he matches those up. Not his generic methodology, but his methodology on this case. It's the methodology that's commonly accepted in the fingerprint community, the scientific community, that's the commonly accepted method for comparing fingerprints, and he explained it, yes. In conclusion, this case is not Safford. Our expert found a sufficient number of points of comparison, clarity and quantity, he explained the basis of his opinion, it was properly admitted at trial, and the jury was properly able to weigh this testimony. We ask this court to affirm the defendant's conviction for residential burglary. Thank you. Thank you. Good morning, your honors. May it please the court. My name is Amy Watroba, I'm an Assistant State's Attorney. Just briefly to address, oh, excuse me, briefly to address the DNA issue, Williams is squarely on point in this case. Williams found that cellmark reports are not testimonial, and this case involves a cellmark report. Therefore, under Williams, regardless of, on the facts of this case, one need not delve too deeply into the actual reasoning in the plurality, the concurrence, or the dissent, as I believe courts have held, and State v. Deadweiler would be the one case specifically that is held post-Williams, that when you have a cellmark report, courts are bound by the judgment of the U.S. Supreme Court in Williams, and cellmark reports are not testimonial. So, unless there are any other questions. Thank you. Your honors, the State mentioned that Kovacs testified that there was a sufficient number of points. I'd like to mention, however, that Kovacs did not say what this sufficient number was. It could have been one. It could have been two. We have no idea, and in this case, the court is clear that once that number starts reaching zero, we have an admissibility problem, and that could have been the case here, because we have no way to find out what his points of comparison were. Counsel also mentioned that Kovacs went on at length describing the methodology. I'd like to say that the examiner in Safford did the same. She explained level one detail, level two, level three. She said that once she got her results, it was verified by someone else. The same thing. This case is just like Safford, your honors. If you didn't have Safford, though, what would you be arguing? If I did not have Safford? Right. Because I think, as my colleague said, I think, you know, it's fair to say that's a bit of an outlier. Well, your honors, that's the case that we have. That's the case that we're relying on. That's the case that the trial attorney based this objection on. Okay. But Justice Lavin's question is, taking that out of the equation, what would your argument be? If there would be one. Well, your honors, let's say this case went back on remand. This defendant would be able to challenge the fingerprint evidence on whatever basis is available at that time. Whatever basis the trial attorney wants to challenge it. She may challenge it on the reliability. She may challenge it on this particular basis, the foundation. Whatever basis is available. But at this point, this is what we have in this case, is the challenge to the foundation for his opinion. It's a clear violation under Safford, your honors. So if this court has no further questions, I'd ask that this court reverse the remand as cost for a new trial. Thank you. We'll take it under advisement, and we're going to adjourn for a panel change for the next case.